### JAMES M. MAYHO and JAMES H. PARKER *v.* B. W. COTTON.

Before the Act of 1868, the owner of land was not restricted by the Constitution in the choice of his homestead to the tract upon which he resided, nor to contiguous tracts, but the same might have been assigned from any land of the required value.

CIVIL ACTION for the recovery of 900 acres of land, tried at the January (Special) Term, 1873, of HALIFAX Superior Court, before his Honor, *Cloud, J.,* upon the facts contained in the following CASE AGREED:

"The sheriff of Halifax, under executions duly issued on sundry judgments against the defendant, B. W. Cotton, on the 6th March, A. D., 1869, after due levy and advertisement, (levy made subsequent to the adoption of the Constitution,) proceeded to sell at the Court House door in said county, the lands claimed in this action. At the said sale, the plaintiff, Parker, became the purchaser at the last and highest bid, and before the settlement with sheriff, transferred half interest in said land to the plaintiff, Mayho, and the sheriff's deed was, at the request of plaintiffs, made jointly to them, they paying the purchase money in full. The defendant, B. W. Cotton, who was defendant in said executions, was in the possession of the land when sold by the sheriff, and has been in possession ever since. On the day of sale, and before the sale was made, the plaintiff, Parker, and the defendant, Cotton, had a conversation just about the time of sale, in which Cotton said, that no one was bidding for the land in any way for his benefit or advantage and that he claimed nothing in this place; that he wished to save his other place, and proposed to borrow of Parker a small sum of money to aid in accomplishing that object; which, however, Parker did not loan him. This place, known as the "Swamp Place," was levied on at that time and advertised for sale, and was sold on the same day, and before the sale of the place mentioned in these proceed-

19

ings. At the sale of the said "Swamp Place," the defendant claimed to have the homestead laid off out of that place, and when the place now in controversy was sold by the sheriff, no such claim was made. The defendant had also proceeded by applications before one Wm. Fenner, a Justice of the Peace for said county, on the 2d day of March, 1869, to have his homestead laid off, and it was done on "Swamp Place," and return thereof was made to the office of the clerk of the Superior Court, and duly recorded in the Register's office of said county, on the —— day of ——, 186–, the said return being dated 4th March, 1869. The plaintiff was induced to bid at the sale by the said Cotton's saying to him that he claimed nothing in the place mentioned in this action, and by his claim of homestead in the "Swamp Place."

The sheriff made a deed to the purchaser of the "Swamp Place" in fee, without reservation of homestead. The purchaser of said "Swamp Place" brought an action against the defendant, Cotton, to recover possession of said place. Cotton appeared and defended the action, and claimed that it was sold subject to his right of homestead in that tract. The suit was compromised between the said parties to that action by the parties thereto, on the payment by the defendant, Cotton, of a sum agreed on between said parties, as the consideration for the conveyance of said land to the defendant by the plaintiffs.

The defendant, Cotton, owned the said two tracts of land, which were four miles apart. His "Mansion House" and residence was at the time of said sale and for many years previous, and has been ever since, on the place claimed in this action. Defendant, Cotton, has a wife and several minor children living.

The defendant, Cotton, only claims a homestead in this tract, and offers to surrender the excess if any. The lard mentioned in this action was purchased by said Parker for

$2,060. He offered to sell the same to the defendant a few days after purchasing it, for $4000, which the defendant declined to give. A fair rent for the land in dispute is $125 *per annum.*"

Upon the foregoing facts, the Court being of opinion that the plaintiff was entitled to recover, gave judgment accordingly, and a further judgment against the defendant and his surety for the sum of $530 damages and for costs.

From this judgment, defendant appealed.

*Clarke & Mullen,* for appellant:

1. Homestead means dwelling-place, and every homestead must embrace the capital-mansion.

2. The husband cannot waive homestead except by deed in which wife joins. Mere words of judgment debtor on day of sale cannot have a force which would be denied his deed (without his wife's signature), supported by ample consideration.

3. Even admitting that the head of a family has a right to elect as a homestead a "swamp" or other place which is not his homestead, the case agreed shows he has not done so here, for he had resided before, at day of sale, and ever since, at this place. Furthermore the sheriff had refused in deed of Swamp Place to exempt homestead for debtor.

4. Decision in *Watts* v. *Leggett,* 66 N. C. Rep. 197, admits power of Legislature to extend homestead by allowing two tracts not contiguous to be embraced when a homestead of contiguous lands cannot be had, but even then one of them must contain capital-mansion. Besides this act of extension was passed subsequently to this sale.

5. This view of homestead is supported by decisions in all the other States.

6. Case shows property is worth at least $4,000. Take

out $1,000 as homestead, and enough is still left to pay plaintiff his bid, $2,000, and interest.

7. Wife should be a party to any proceeding to eject her from homestead, especially since she cannot now claim dower. . *Bunting* v. *Foy*, 66 N. C. Rep. 193.

*Coningland*, and *Batchelor, Edwards & Batchelor*, contra.

RODMAN, J. The defendant, Cotton, owned two pieces of land four miles apart, the one called the Mansion, on which he resided, and which is claimed in this action, and the other called the Swamp Place. Both were sold under execution on 6th March, 1869. The plaintiffs purchased the Mansion. The defendant claims a homestead in it.

On the 2d March, 1869, defendant proceeding under the Act of 22d August, 1868, then in force, (Acts 1868, ch. 43,) applied to a Justice to have his homestead laid off in the Swamp Place, which was done, the return of the freeholders being dated 4th March. It does not appear when the return was registered.

The grounds on which the defendant now claims a homestead in the Mansion, as we understand them, are :

1. That as the law then stood under the Constitution and Act of 1868, he was obliged to take his homestead in the land on which he resided, and any proceeding to have it laid off elsewhere was void, at least unless his wife joined in the application.

2. That as the sheriff conveyed by his deed to the purchaser of the Swamp Place the whole estate of the defendant without an express exception of the homestead, the defendant was not allowed a homestead in that place.

It may be inferred from the language of the Constitution that its framers supposed that the debtor would take his homestead in the dwelling which he inhabited and the surrounding lands. But his choice is not positively restricted

to that, nor to contiguous lands. It might frequently happen that if so restricted, a debtor might not be able to get a homestead of the permitted value, when by taking lands not contiguous to his dwelling he could do so. Was a debtor to be restrained and maimed in his homestead, and the intention of the Constitution defeated by an accident of that sort? The lands although not contiguous might be very near, and the clear intention of the Constitution was to exempt a certain *value.* What difference could it make to a creditor whether the assignment were in one place or another, so that the *value* of the exemption was not increased? The Legislature following out the Constitutional intent, and regarding the value of the exemption as the only thing material, soon removed all doubt by enacting that a homestead might be assigned in tracts not contiguous. As soon as it was established that a man owning a dwelling worth $500 could take take that, and also land elsewhere worth $500 for his homestead, it became evident that no reason of justice or convenience prohibited him from taking his homestead to its full value in the latter place and giving up the former to his creditors if he so selected. It is true the homestead in this case was assigned before this power was expressly established by legislation; but it existed under the Constitution and the Act of 1868, at least to the effect that the assignment of a homestead in a place other than the residence, at the request of the debtor was not void as to him. In this case the defendant received his homestead in the Swamp Place; that the sheriff did not refer to it and exclude it from his deed, was not material. A sheriff's deed passes only what he may lawfully sell. If, upon the compromise with the purchaser afterwards, the defendant did not obtain the full value of his homestead right it was his own folly. It is to be presumed that he did. By so receiving it and by his representations to the plaintiff when he purchased the land now sued for, the de-

fendant is estopped from claiming a homestead in this land. If taking a homestead in the Swamp Place was illegal in the sense of being unauthorized, the defendant cannot avail himself of his own illegal act to obtain two homesteads, as in effect he would if he could defeat the plaintiff's action. Neither is it material that the wife of defendant did not by deed assent to his receiving a homestead in the Swamp Place. Sec. 8, art. 10 of Constitution applies only to a conveyance of the homestead after it has been laid off.

PER CURIAM.                              Judgment affirmed.